**E-FILED**
Tuesday, 16 September, 2014 09:02:51 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DEREK J. BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-CV-3171 |
| | ) | |
| TIMOTHY F. BUKOWSKI, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff entered the Jerome Coombs Detention Center (the Jail) on crutches, a week after receiving surgery on his right hip to correct avascular necrosis—a condition in which a lack of blood supply leads to the death of bone tissue. Plaintiff also presented to the Jail with a plethora of current prescriptions which included:

Vicodin (a/k/a Hydrocodone/APAP or Norco)(pain reliever)
Xanax (a/k/a Alprazolam)(anxiety and panic disorder)
Flexeril (a/k/a Cyclobenzaprine)(muscle relaxant)
Zantac (a/k/a Ranitidine)
Betamethasone cream (to treat herpes simplex rash)
Acyclovir (to treat herpes simplex rash)
Relafen (a/k/a Nabumetone, a non-steroid anti-inflammatory)
Ultram (a/k/a Tramadol)(pain reliever)
Bactrim DS (antibiotic)

According to Plaintiff, Defendants were deliberately indifferent to his serious medical needs during Plaintiff's 1 ½ year stay at the Jail by: 1) failing to continue his medications as prescribed; 2) refusing to give him a second mattress; 3) refusing to provide physical therapy; 4) failing to adequately treat a rash; and, 5) failing to adequately treat rectal bleeding.

Before the Court is Defendants' motion for summary judgment. A jury could certainly find for Defendants. However, looking at the record in the light most favorable to Plaintiff, which the Court must do at this stage, a reasonable jury could also find for Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) Accordingly, a jury trial must be held.

**I.   A reasonable jury could find that stopping all of Plaintiff's prescribed medicines when Plaintiff arrived at the Jail amounted to deliberate indifference to Plaintiff's serious and immediate need for pain medicine, anxiety medicine, and a tapered withdrawal from his Vicodin addiction.**

As a pretrial detainee, Plaintiff's claims arise from the Fourteenth Amendment's Due Process Clause, but the analysis is the same as for inmates under the Eighth Amendment: Plaintiff must show that Defendants were deliberately indifferent to a serious

medical need.  Estate of Miller v. Tobaisz, 680 F.3d 984, 989 (7th Cir. 2012).

When Plaintiff arrived at the Jail on September 23, 2009, seven days had passed since his surgery and he was taking Ultram (a/k/a Tramadol) and Norco (a/k/a Vicodin).  Both of these medications were either confiscated or stopped pursuant to the Jail's policy that medications be approved by the healthcare staff.  Two days later, on September 25, 2009, Defendant Menard, a physician assistant at the Jail, prescribed Ultram, Xanax and Antara (a cholesterol lowering medication)[1] for Plaintiff after speaking with Plaintiff's surgeon, Dr. Verghese.

Plaintiff testified in his deposition that he did not receive the Ultram until October 1, though whether any Defendant was personally responsible for that delay is unclear.  Plaintiff also testified that he never received any Norco (Vicodin) because the Jail has a policy against the administration of Vicodin.  Looking at the evidence in the light most favorable to Plaintiff, Defendants refused to contact Plaintiff's treating physician, Dr. Zumwalt, to determine

---

[1] Whether Plaintiff was taking Antara before his incarceration is unclear.

Plaintiff's current prescription list and medical history, despite Plaintiff's requests.

A reasonable juror could believe from Plaintiff's own testimony that he was experiencing severe post-surgical pain without the Ultram and Norco that had already been prescribed. Dr. Zumwalt echoed that sentiment in his deposition. Also, by Plaintiff's own admission, he was addicted to Vicodin, which he had been taking for over a year in increasing doses. A reasonable jury could conclude that failing to taper Plaintiff from the Vicodin caused Plaintiff to experience painful withdrawal symptoms.

The Jail's policy of stopping all current prescriptions and only starting those prescriptions again if Jail health care staff deem it necessary was arguably one of the moving forces behind these deprivations. The Defendants with medical training arguably contributed to the deprivations by failing to contact Plaintiff's treating doctor outside the prison to determine Plaintiff's current prescriptions and medical history and by refusing to allow Plaintiff's wife to bring Plaintiff's prescriptions to the Jail for administration to Plaintiff.

Of course, evidence abounds in Defendants' favor, such as the surgeon's opinion that Plaintiff was drug-seeking.  Plaintiff was also disciplined at the Jail for hiding pills in his crutches for sale to other inmates.  But that evidence would not necessarily preclude a reasonable jury from concluding that, despite Plaintiff's addiction and credibility problems, Plaintiff still had a legitimate and serious need for his Ultram and Norco to continue as prescribed, at least until those prescriptions ran out.

**II.     A reasonable jury could find that Defendants' failure to provide a second mattress for Plaintiff amounted to cruel and unusual punishment.**

According to Plaintiff, the mattress he was provided at the Jail was torn, tattered, and less than ½ inch thick.  Plaintiff sleeps on his side, and doing so in light of his hip surgery was, according to Plaintiff, very painful on the thin mattress. At a bond hearing in Plaintiff's criminal case, the presiding judge directed that Plaintiff receive his current prescriptions and an additional mattress, granting an unopposed oral motion by Plaintiff's counsel.  Plaintiff later filed a written motion in his criminal case, again asking for an additional mattress and medical treatment.  A hearing was held on the motion, and Defendant Menard agreed to discuss the mat

request with Defendants Bukowski and Downey.  Yet, Plaintiff never received an additional mattress.

Defendants correctly point out that no doctor ever concluded that Plaintiff needed an additional mattress.  In fact, Plaintiff's surgeon testified that an additional mattress was unnecessary.  However, cruel and unusual punishment includes not only deliberate indifference to a serious medical need, but also deliberate indifference to conditions of confinement which deprive an inmate of the "'minimal civilized measure of life's necessities,'" Jaros v. IDOC, 684 F.3d 667, 671 (7th Cir. 2012)(quoted cite omitted).  Plaintiff's recent surgery and description of his pain, if believed, might allow a reasonable jury to conclude that denying Plaintiff's request caused Plaintiff to suffer an objectively serious deprivation.

**III.   A reasonable juror could find that Plaintiff had a serious need for adequate physical therapy for his arm and hip, and that Defendants were deliberately indifferent to that need.**

According to Plaintiff, he was unable to wean himself from the crutches, causing his leg muscles to atrophy.  He also developed what was diagnosed as "tennis elbow," perhaps from the prolonged use of the crutches.  A reasonable jury could find that the surgeon,

Dr. Verghese, did recommend physical therapy for Plaintiff's hip and arm.

Defendants point out that Plaintiff was instructed on arm exercises and given a towel to perform them. They argue that all of the exercises, including those necessary to strengthen and stretch Plaintiff's hip, could have been done by Plaintiff on his own. And, Dr. Verghese testified that he would have instructed Plaintiff on how to wean himself from the crutches.

However, Plaintiff testified that he was never adequately shown what exercises and stretching to do and was unable to do so anyway because of his pain. Further, it is undisputed that Plaintiff did not see a physical therapist at any time. Whether Defendants knew what kind of exercises and stretching Plaintiff was supposed to perform is not clear. And, the amount of instruction Plaintiff received cannot be determined without a credibility judgment which belongs to the jury.

**IV. A material dispute of fact cannot be ruled out on the treatment of Plaintiff's rash and rectal bleeding.**

Plaintiff presented to the Jail health care staff with a rash in December of 2009. He received hydrocortisone cream and was told

Page **7** of **11**

to return if necessary. The rash either continued until or reappeared the following March and/or April, and Plaintiff does not dispute that he refused to go to an appointment scheduled with the Jail physician assistant.

However, Plaintiff asserts, and the medical records support, that his rash was not a typical rash but instead some type of recurrent herpes simplex virus. Plaintiff had apparently been prescribed Acyclovir for this rash by his outside physician, Dr. Zumwalt, before Plaintiff's incarceration. Plaintiff says that he repeatedly told the health care staff this and asked them to contact Dr. Zumwalt, but the staff persisted in ineffective treatment. Plaintiff refused his appointment with the physician assistant, he says, because attending the appointment would have been futile.

Whether Plaintiff's rash was a serious medical need is hard to tell. Plaintiff seems to agree that the rash resolved by itself, and he does not explain whether the rash was spreading or painful. However, in light of Plaintiff's medical history, the Court cannot rule out that a jury might find that the rash was a serious medical need. If so, the refusal to check with Dr. Zumwalt for Plaintiff's medical

history and current prescriptions might be seen as deliberately indifferent.

As for Plaintiff's rectal bleeding, Plaintiff asserts that he informed Defendants Gill, Sangster, Menard, and White of the problem but they all failed or refused to examine him. Plaintiff feared that the Ibuprofen he had been taking was causing internal bleeding. According to Plaintiff, Defendant White told Plaintiff to eat more vegetables and drink more water but never examined Plaintiff and knew that Plaintiff could not simply order more vegetables from the Jail.

As with Plaintiff's rash, whether the rectal bleeding was serious is hard to tell. The condition seemed to resolve on its own. However, the Court cannot rule out the possibility that a jury might consider Plaintiff's description of the problem as serious enough to warrant an exam and a phone call to Dr. Zumwalt for Plaintiff's medical history.

## CONCLUSION

Defendants point to evidence to support a jury verdict in their favor, but Plaintiff's own testimony and medical history create disputed questions of material fact that must be resolved by a jury.

Defendants' assertion of qualified immunity requires looking at the record in the light most favorable to Defendants, which the Court cannot do.  Accordingly, summary judgment is denied and this case is set for trial.

**IT IS ORDERED:**

1. Plaintiff's motion to accept his exhibits E and F for consideration is granted (112).

2. Defendants' amended motion for summary judgment is denied (108).

3. The jury selection and jury trial are scheduled for January 20, 2015.

4. A final pretrial conference is scheduled for November 12, 2014, at 1:30 p.m..  Plaintiff shall appear by video conference. Defense counsel shall appear in person.  The trial date will be chosen at the final pretrial conference.

5. An agreed, proposed final pretrial order is due November 6, 2014.

6. Motions in limine are due November 6, 2014, to be argued orally at the final pretrial conference.

7. The Court will send out proposed jury instructions and voir dire for discussion at the final pretrial conference. Additional or alternate instructions and additional voir dire questions are due November 6, 2014.

8. Plaintiff and Defense counsel must bring their exhibits, marked, to the final pretrial conference.

9. Objections to exhibits are due November 6, 2014. Objections must attach the exhibit at issue.

**10. The clerk is directed to issue a video writ to secure Plaintiff's presence at the final pretrial conference.**

ENTER: September 16, 2014

FOR THE COURT:

<u>     s/Sue E. Myerscough     </u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE